UNITED STATES of America, Appellee,

v.

John Roger SAGER, Appellant.

UNITED STATES of America, Appellee,

v.

Jay Houston HARMON, Appellant.

Nos. 82–1592, 82–1593.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 13, 1984.

Decided Sept. 27, 1984.

Rehearing and Rehearing En Banc
Denied Nov. 15, 1984.

McDaniel, Gott & Wells, P.A., Jonesboro, Ark., for appellant.

Bruce J. Rosen, Fritschler, Pellino, Schrank & Rosen, S.C., Madison, Wis., for Sager; Stephen P. Hurley, Madison, Wis., of counsel.

Before BRIGHT, McMILLIAN and ARNOLD, Circuit Judges.

## ON PETITION FOR REHEARING

ARNOLD, Circuit Judge.

On May 22, 1984, after oral argument, we filed our opinion in these cases. *United States v. Little*, 735 F.2d 1049 (8th Cir. 1984).[1] We reversed the convictions of defendants John Roger Sager and Jay Houston Harmon, holding that certain evidence introduced against them had been seized under a warrant based on an insufficient affidavit, in violation of the Fourth Amendment, and that the case would have to be re-tried, as to these two defendants, without the tainted evidence. Our holding was of course based on the accepted principle, first announced in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and not contested by the government in its arguments before us, that evidence seized in violation of the Fourth Amendment may not be used in the prosecution's case in chief.

On July 5, 1984, before the time for petitioning for rehearing expired,[2] the Supreme Court decided *United States v. Leon*, — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677, holding that evidence seized under a warrant is admissible, even though the warrant might later be held to be based on an affidavit that failed to establish probable cause, if the officers executing the warrant reasonably relied on it. On July 10, 1984, the United States filed its petition for rehearing with suggestion for rehearing en banc. The petition asks us to apply *Leon* to these cases, to hold that the offi-

cers' reliance on the warrant involved here was objectively reasonable, and to reinstate these convictions. Defendants, responding to the petition at our request, argue that *Leon* should not be applied "retroactively," that even if it is this affidavit for warrant was so plainly insufficient as not to justify any reasonable officer in relying upon it, and, in the alternative, that in any event the cases should be remanded to the District Court for an evidentiary hearing on certain issues of fact said to be relevant to the application of *Leon*.

The petition for rehearing is granted.[3] We hold that *Leon* does apply to these cases, that the officers who executed the warrant in question behaved in an objectively reasonable fashion, and that no material issues of fact exist that would make an additional hearing necessary on defendants' motion to suppress. The Fourth Amendment exclusionary rule, as it has now been authoritatively defined, does not apply here, and the judgments of conviction are therefore affirmed.

## I.

*Leon* holds that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant," — U.S. at —, 104 S.Ct. at 3420, is, in general, not to be excluded. The exclusionary rule will continue to apply, however, in certain exceptional situations: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)," 104 S.Ct. at 3421–22; (2) if "the issuing magistrate wholly abandoned his judicial role," *id.* at 3422, thus becoming a rubber stamp for the police; (3)

---

1. The opinion covered appeals by three defendants: Billy Gene Little, John Roger Sager, and Jay Houston Harmon. Little's conviction was affirmed, and his case is no longer before this Court.

2. We had extended the time on motion of the United States.

3. This action by the panel makes the government's suggestion for rehearing en banc moot. Defendants are of course free to file a timely petition for rehearing, with or without suggestion for rehearing en banc, directed to this, the second panel opinion in these cases.

if the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown v. Illinois*, 422 U.S. [590] at 610–611 [95 S.Ct. 2254 at 2265–2266, 45 L.Ed.2d 416] (POWELL, J., concurring in part)," 104 S.Ct. at 3422; or (4) if the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid," *ibid.* These rules, the Supreme Court says, will result in "suppression of evidence obtained pursuant to a warrant ... only in ... unusual cases ...." *Id.* at 3419.

The first question is whether *Leon*, which was not the law (or was not thought to be) when defendants' allegedly criminal conduct took place, when this warrant was issued and executed, when this case was tried, or when we initially decided this appeal, has any application at all to Harmon's and Sager's situations.[4] The defendants say no, and cite us to *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). *Johnson* was a comprehensive review of the Court's precedents with respect to retroactivity of decisions in the field of criminal procedure. The opinion in effect codifies the law of retroactivity in Fourth Amendment cases. It holds, in summary, that "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final [5] at the time the decision was rendered," *id.* at 562, 102 S.Ct. at 2594, with, however, certain exceptions, the most prominent of which is

that a rule of criminal procedure that is " 'a clear break with the past,' *Desist v. United States*, 394 U.S. [244] at 248 [89 S.Ct. 1030, at 1032, 22 L.Ed.2d 248] [is] ... almost invariably ... nonretroactive." *Johnson*, 457 U.S. at 549, 102 S.Ct. at 2586. *Leon*, defendants say, was a clear break with the past, and it therefore is not to be applied retroactively to their cases.

The proposition that *Leon* was a clear break with the past gives us no trouble at all. But we cannot accept the rest of defendants' argument. It rests on a reading of *Johnson* that takes words and phrases completely out of context and attempts to fit them into a situation wholly foreign to that for which they were written. The question in *Johnson* was whether *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that the police may not enter a suspect's home to make a routine felony arrest, absent either consent or a warrant, would be applied to an arrest that took place before *Payton* was decided. *Payton* enlarged the rights of criminal defendants and tightened the limits circumscribing the conduct of the police. The heart of the retroactivity issue in *Johnson*, therefore, was whether police conduct that perhaps was reasonable at the time under what was then thought to be the law, should now be "penalized" by the application of a later-decided case. The same thing is true of all the other cases in this field, beginning with *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the first case in which the Supreme Court held one of its own

---

4. Defendants put some emphasis on the fact that the government did not question the exclusionary rule in this case until it filed its petition for rehearing. Ordinarily arguments raised for the first time on rehearing will not be considered. But here the argument is advanced in support of the judgment below, and defendants have had a full and fair opportunity to oppose it in their responses to the government's petition. We review judgments, not opinions, and we may affirm a judgment on any ground supported by the record, whether or not that ground was urged below or passed on by the District Court.

5. Harmon's and Sager's cases were not yet final, in this sense, when *Leon* was decided. "Final" for this purpose means that the time for petitioning for certiorari had elapsed, or a petition for certiorari had been finally denied. See *United States v. Johnson, supra*, 457 U.S. at 542 n. 8, 102 S.Ct. at 2583 n. 8. The time for petitioning for certiorari in this case has not yet begun to run. The finality of our judgment entered on May 22, 1984, was suspended by the government's timely filing of a petition for rehearing.

precedents in the field of constitutional law nonretroactive.[6] In each instance the question of retroactivity related to a new decision expanding the rights of criminal defendants, and a major argument made against retroactivity was that it would disappoint the reasonable reliance of the authorities on what they thought was the law. The extent to which law-enforcement authorities had relied on the old rule was always a major consideration in deciding the question of retroactivity. See, *e.g., Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 1341, 1343–45, 79 L.Ed.2d 579 (1984); *Johnson*, 457 U.S. at 549, 102 S.Ct. at 2586.

Here, of course, the situation is reversed. The new rule (*Leon*) is less favorable to defendants than the old one (*Weeks*) and more supportive of police conduct. The authorities, far from resisting its application, seek it avidly. And application of *Leon* will not infringe on anyone's reliance interest. The defendants do not claim that they planned to fly drugs in from Jamaica in reliance on any set of rules having to do with the introduction of evidence in criminal cases. We faced much the same question in our prior opinion in this very case. When the warrant in question here was issued, the sufficiency of affidavits based on informants' tips was governed by the veracity and basis-of-knowledge tests set out in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Almost exactly two years after the issuance of the warrant, the Supreme Court decided *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), substituting a more flexible, totality-of-the-circumstances test, a standard considerably more indulgent towards official conduct. We held that *Gates* did apply retroactively to this case and applied its rule in assessing the validity of the affidavit. We said, in words equally

applicable to the question of *Leon*'s retroactivity:

> Defendants did not plan any of their own conduct in reliance on rules of law governing the requisite specificity of affidavits for search warrants. It is therefore not unfair to them to apply the new rule.

*United States v. Little*, 735 F.2d at 1054 (citation omitted).

There is some recent evidence that the Supreme Court would take the same position. In *Massachusetts v. Upton*, —— U.S. ——, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (per curiam), the question presented was whether a warrant issued in 1980 was supported by an affidavit establishing probable cause. The Supreme Court upheld the warrant, applying *Gates*. And in the course of its opinion the Court emphasized that *Gates*, far from being a mere refinement or qualification of the "two-pronged test" applied during the regime of *Aguilar* and *Spinelli*, was instead an outright rejection of that prior rule of law. Nothing in the Court's opinion gives any hint that this obviously "retroactive" application of *Gates* was at all out of the ordinary. Similarly, on July 5, 1984, the day *Leon* was decided, the Supreme Court vacated and remanded for further consideration in light of *Leon* several cases from the courts of appeals. *United States v. Cassity*, —— U.S. ——, 104 S.Ct. 3581, 82 L.Ed.2d 879; *United States v. Tate*, —— U.S. ——, 104 S.Ct. 3575, 82 L.Ed.2d 873; *United States v. Crozier*, —— U.S. ——, 104 S.Ct. 3575, 82 L.Ed.2d 873. This action makes no sense unless the Court intended the lower courts to apply *Leon*. There can be no doubt that the Court regarded its own *Leon* opinion as a "clear break with the past," and that it knew that such cases are not retroactive under the rules of *Johnson*. There is at least a fair inference, therefore, that these vacations and remands for reconsideration

---

**6.** "[H]eretofore, without discussion, we have applied new constitutional rules to cases finalized before the promulgation of the rule." *Linkletter*, 381 U.S. at 628, 85 S.Ct. at 1737 (footnote omitted). See also Holmes, J., dissenting, in *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910): "Judicial

represent *sub silentio* holdings that *Leon* is retroactive.[7]

We hold that the *Johnson* rules of retroactivity do not control in this very different area. We turn instead to the traditional rule restated in *Solem v. Stumes*, 104 S.Ct. at 1341: "As a rule, judicial decisions apply 'retroactively.' Indeed, a legal system based on precedent has a built-in presumption of retroactivity." (Citation omitted.) *Leon* does apply to this case, and we now turn to a discussion of whether it alters our previous decision that the evidence in question should have been excluded.

## II.

Defendants contend that even if *Leon* applies in principle, they come within three of the exceptions contained in the Supreme Court's opinion. Specifically, they argue that this particular affidavit for warrant so clearly failed to establish probable cause that no objectively reasonable officer could have relied upon it; that the affidavit contained material misstatements of fact, either known to the affiant to be false, or included in the affidavit with reckless disregard of truth or falsity; and that the issuing magistrate was not neutral and detached, but acted as a mere "rubber stamp." In the alternative, defendants contend that they are at least entitled to an evidentiary hearing on the application of some or all of these exceptions, and that we should not decide the issues against them on the present record.[8] We deal with each of the claimed exceptions in turn.

■ 1. Defendants correctly point out that the government did not argue in the District Court that the officers who executed the warrant did so in "good faith." It is perfectly true, therefore, that the question of the officers' subjective good

faith has not been litigated. This question, of course, is one of fact, and it normally should not be decided by an appellate court, especially when no evidentiary hearing on the question has taken place. *Leon*, however, does not turn on "good faith" in this sense. Although courts and lawyers have for some time discussed the proposed "good faith" exception to the exclusionary rule, and although *Leon* is said, in some short-hand descriptions, to have adopted this exception, that is not at all what the Supreme Court has done. The Court, in fact, has been at pains to explain that it is objective reasonableness, not subjective good faith, that is important. "We emphasize that the standard of reasonableness we adopt is an objective one." *Leon*, 104 S.Ct. at 3420 n. 20. "[W]e also eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant.... [O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 3421 n. 23.

We see no reason for an additional evidentiary hearing on this issue. All of the facts relevant to the question of objective reasonableness have been fully ventilated. Defendants do not seem to suggest any new fact relevant to this issue that is not already in the record. Application of the objective-reasonableness standard is really more akin to the application of a new legal criterion to the same facts, than it is to the decision of a new question of fact. We could of course remand to the District Court for it to determine this question in the first instance, but the record is complete, and the issue has been fully briefed, and we see no reason for such a circuitous procedure. In our view, it is entirely prop-

---

decisions have had retrospective operation for near a thousand years."

**7.** In at least one of these cases, *United States v. Cassity,* the government's petition for certiorari, which we have obtained and examined, does not even raise the question of whether the exclusionary rule should be modified. The Supreme Court's order nevertheless invites the govern-

ment to avail itself of *Leon* when the case gets back to the Sixth Circuit on remand.

**8.** Defendants do not claim that the fourth *Leon* exception, covering warrants that on their face fail to describe the places to be searched or the persons or things to be seized with sufficient particularity, applies here.

er for us to address this issue and decide it on the present record.

Doing so, we have little difficulty in concluding that the officers here did behave in an objectively reasonable fashion. Our previous opinion fully details the facts and circumstances of this case and explains at some length what we believed (and still believe) to be the deficiencies in the affidavit. It must be said, though, that the case was a close one. Although the panel was unanimous, the District Court [9] went the other way, so it must be said here; as it was in *Leon*, that "[t]he affidavit ... provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." 104 S.Ct. at 3423. In fact, the affidavit in the case at bar bears many similarities to the affidavit involved in *Leon*. See *id.* at 3411. There, as here, some of the information in the affidavit was stale, the affidavit failed to establish the informant's credibility, and much of the conduct attributed to defendants was completely consistent with lawful behavior. We cannot say that "no reasonably well-trained police officer" reading this affidavit "could have believed that there existed probable cause" for the installation of the transponder. *Id.* at 3423. Defendants' claim that this first exception applies must therefore be rejected.

2. It is suggested that the affidavit contained misstatements of fact, that these misstatements were material, and that the officer either knew that certain parts of the affidavit were false or acted with reckless disregard of whether they were true or not. This of course is not a new argument. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), was well established in the law long before *Leon*. In fact, appellant Harmon devoted a considerable portion of his initial brief on this appeal to this argument. There is no occasion for another evidentiary hearing on this issue. We did not reach the *Franks* point

in our prior opinion, since our conclusion that the affidavit, even assuming that it was completely true, did not establish probable cause made it unnecessary to face the issue. We do face it now, and we hold that the affidavit, even with the alleged misstatements excised, would still have justified the officers' conduct in this case under the *Leon* standard. It is true that the affidavit contains certain inaccuracies, and that it did not include certain facts, claimed to be true by defendants, that would have thrown some doubt on the conclusion of probable cause. The District Court, however, has implicitly found that the officer who made the affidavit did not either willfully or recklessly misstate any fact. This conclusion is not clearly erroneous.

3. Defendants claim they should have an opportunity to show that the magistrate who issued the warrant abandoned his neutral and detached position and acted as a rubber stamp. The case cited by the Supreme Court in *Leon* to illustrate this exception is instructive. In *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), the magistrate actually accompanied the officers on their search:

> He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all 'similar' items as well, leaving determination of what was 'similar' to the officers' discretion.

*Id.* at 327, 99 S.Ct. at 2324.

Defendants have not offered to prove anything of the kind here. Instead, they argue simply that the affidavit was so insufficient that any magistrate who would have acted upon it favorably must have

---

**9.** The Hon. George Howard, Jr., United States District Judge for the Eastern and Western Dis-   tricts of Arkansas.

been a rubber stamp. This is only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable, an argument that we have already rejected. We do not believe that the magistrate who issued this warrant was guilty of the kind of misconduct that the Supreme Court evidently had in mind in *Leon* and *Lo-Ji.*

### III.

We reaffirm our previous holding that the affidavit was insufficient to establish probable cause, and that the magistrate's order issued in response to it was invalid. Under *Leon,* however, because the officers behaved themselves in an objectively reasonable fashion, the evidence seized under the unconstitutional order cannot be suppressed. Our previous direction that the convictions of Harmon and Sager be reversed is set aside on rehearing, and these convictions are now

Affirmed.