743 P.2d 1007

**STATE of Idaho, Plaintiff-Appellant,**

v.

**William F. VARGOVICH, Defendant-Respondent.**

**No. 16591.**

Court of Appeals of Idaho.

Oct. 2, 1987.

Petition for Review Denied Jan. 7, 1988.

Jim Jones, Atty. Gen., by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for appellant.

Charles A. Brown, Aherin, Rice & Brown, Lewiston, for respondent.

BURNETT, Judge.

In this case we must decide whether a search warrant was issued upon a proper finding of probable cause. The question is posed by the state in an interlocutory appeal from a suppression order. For reasons explained below, we reverse the order.

The facts are undisputed. William Vargovich stands accused of participating in two burglaries. The accusation was made after Orofino police officers searched his residential property and found camping gear that had been reported stolen. The search was conducted under a warrant issued upon information provided largely by an unnamed informant. The informant's report was summarized in an affidavit accompanying the warrant application. According to the affidavit, the informant told police that he had personally observed camping gear stored in the loft of a workshop at Vargovich's residence. The informant gave a precise description of ten articles of camping gear. Although six weeks had elapsed since the informant made this observation, he asserted that the camping gear would still be at Vargovich's residence because "William Vargovich commonly is involved in theft of this sort and does not sell or dispose of the property, but keeps the property for his own use." The informant opined that the goods might have been moved from the loft, but he specifically mentioned various other places on Vargovich's property where the stolen items were likely to be found. The informant claimed personal knowledge that the equipment had been stolen during burglaries of camper vehicles in the Washington Creek area.

The police officer who signed the affidavit averred that he had checked the items mentioned by the informant against lists of stolen property compiled by the Clearwater County Sheriff's Office. The officer found that the ten items described by the informant matched exactly the items reported stolen from two camper units in the Washington Creek area at about the time indicated by the informant. The officer further stated that another officer knew Vargovich and was aware that Vargovich commonly hunted and camped in the Washington Creek area. Upon this information, a magistrate issued the warrant. Many of the items listed in the warrant were found and seized.

After Vargovich was arrested and held to answer in district court, his counsel filed a motion to suppress. He argued that the warrant had been unsupported by probable cause. The district judge agreed. This appeal followed.

The state challenges the judge's ruling on two grounds. First, the state contends that the trial judge erred in determining that the warrant had not been issued on probable cause. Second, the state asserts that even if the warrant were defective, the evidence nevertheless should be admitted under a limited good faith exception to the exclusionary rule, as set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Because we agree with the state's first contention, we need not address the second.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a "totality of the circumstances" test for reviewing magistrate determinations of probable cause. This test was adopted by the Idaho Supreme Court in *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983). The function of an appellate court, under *Gates*, is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed. *E.g., State v. Prestwich*, 110 Idaho 966, 719 P.2d 1226 (Ct.App. 1986).

In cases where probable cause rests upon information supplied by unnamed sources, the *Gates* test is less rigid than a two-pronged test previously articulated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Under *Aguilar-Spinelli*, the government was required to show the veracity of the informant and the basis of his knowledge. Although *Gates* supplanted this requirement with the "totality of circumstances" standard, the *Gates* court took pains to point out that the *Aguilar-Spinelli* criteria are "highly relevant in determining the value of [an informant's] report." 462 U.S. at 230, 103 S.Ct. at 2328.

Accordingly, we have stated that an *Aguilar-Spinelli* analysis remains a "useful first step in evaluating probable cause

where the information is derived, at least in part, from an undisclosed informant." *State v. Schaffer*, 107 Idaho 812, 817, 693 P.2d 458, 463 (Ct.App.1984).[1] When we inquire whether a magistrate had a substantial basis for concluding that probable cause existed, we ask the fundamental questions that any seasoned magistrate would ask: "Where did the unnamed informant get his information?" And, "Is he likely to be telling the truth?"[2] These, in essence, are the *Aguilar-Spinelli* questions. *See State v. Schaffer, supra*, 107 Idaho at 818, 693 P.2d at 464.

■ Turning to the instant case, we first discuss the informant's basis of knowledge. The informant's report, as recited in the police officer's affidavit, contained one of the strongest possible indications of a basis of knowledge—personal observation. *See generally* W. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFESSIONS § 4.3(a)(1) (2d ed. 1987). The informant declared that he had seen the camping gear at Vargovich's residence. He described particularly the location where he saw the equipment and other locations where it might still be found. Although the informant did not explain how he knew the equipment was stolen, this fact was confirmed independently by the police officer. Upon these facts, the basis of knowledge requirement was satisfied.

■ We now consider the veracity requirement. Veracity may be established in two ways—by showing past reliability or by showing present credibility. The record

here contains no information relating to past reliability. However, it does contain indicia of present credibility. The informant's report was a mixture of fact and opinion. The opinion was entitled to little weight, but the facts were stated in such precise detail that they took the report outside the category of a "casual rumor circulating in the underworld." *See Spinelli v. United States, supra* 396 U.S. at 416, 89 S.Ct. at 589. The sheer quantity and precision of detail supported the informant's credibility. *See, e.g., Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (informant's tip was so precise as to justify belief in its veracity). The information included facts, such as exact descriptions of ten items of stolen property, which were not known to the general public but which were known to, or later confirmed by, the police.

■ By discussing credibility, we do not mean to imply that the informant necessarily possessed great personal integrity. That is not the focus of *Aguilar-Spinelli*. Rather, the focus is on the probable accuracy of the information supplied. Here, we think that the level of factual detail and corroboration contained in the affidavit provided the magistrate a reasonable basis to conclude that the informant was truthful in his assertion that he had seen stolen property at the Vargovich residence.

■ In ruling otherwise, the district judge noted that the informant's report contained conclusory allegations connecting Vargovich with thefts or burglaries at

---

**1.** Most states adopting *Gates* have followed the same approach. They treat "veracity" and "basis of knowledge" as important considerations in weighing the totality of circumstances. *See, e.g., Acres v. State*, (Ala.Crim.App. No. 3 Div. 843, slip op. February 10, 1987); *People v. Pannebaker*, 714 P.2d 904 (Colo.1986) (en banc); *State v. Kimbro*, 197 Conn. 219, 496 A.2d 498 (1985); *Felker v. State*, 172 Ga.App. 492, 323 S.E.2d 817 (1984), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 846 (1985); *People v. Ross*, 133 Ill.App.3d 66, 88 Ill.Dec. 260, 478 N.E.2d 575 (1985); *State v. Manso*, 449 So.2d 480 (La.1984), *cert. denied*, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); *Best v. State*, 71 Md.App. 422, 526 A.2d 75 (1987); *People v. Gentry*, 138 Mich.App. 225, 360 N.W.2d 863 (1984); *State v. Novembrino*, 105 N.J. 95, 519 A.2d 820 (1987);

*People v. Lopez*, 95 A.D.2d 241, 465 N.Y.S.2d 998 (1983); *State v. Davis*, 66 N.C.App. 98, 311 S.E.2d 19 (1984); *Riggs v. State*, 732 S.W.2d 765 (Tex. Ct.App.1987); *State v. Anderson*, 138 Wis.2d 451, 406 N.W.2d 398 (1987).

**2.** This methodology is supported by *Gates* itself:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. 462 U.S. at 233, 103 S.Ct. at 2329.

Washington Creek.[3] However, it was not necessary that Vargovich's personal involvement in the crimes be established. The police were not then seeking a warrant to arrest Vargovich; they were seeking a warrant to search his property. A finding of probable cause to issue a search warrant need only be supported by facts affording a reasonable basis to believe that legitimate objects of a search are located in a particular place. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). The camping gear described by the informant precisely matched the items reported stolen. Those items clearly were legitimate objects of a search. The informant's description of Vargovich's home and of the goods seen there supported a reasonable inference that the goods were located at that particular place.

The district judge also was troubled by the fact that the information in the affidavit was about six weeks old. Staleness is a legitimate concern in any determination of probable cause. However, we respectfully disagree with the trial judge's conclusion here. Unlike cash, jewelry or narcotics, the camping gear had no special propensity to be sold or to disappear. Vargovich was known to the police as a camper and hunter—a person who might use the equipment himself. Consequently, the magistrate had a reasonable basis to believe that at least some of the stolen items would still be on Vargovich's property when the warrant was issued.

We hold that the magistrate had a substantial basis to conclude that probable cause existed. The suppression order is reversed. The case is remanded for proceedings consistent with this opinion.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**3.** Actually, there was another link between Vargovich and the crimes. As mentioned in the officer's affidavit, another officer knew that Vargovich often camped and hunted in the Washington Creek area. However, this link was extremely tenuous and would not have been enough to tie Vargovich to the crimes, if such a nexus had been required for the search warrant.